**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HARVEY A. KALAN, M.D., INC., ET AL, HARVEY KALAN, DEBORAH KALAN, WILSHIRE PALISADES LAW GROUP, P.C., DAVID I. LEFKOWITZ and NORMA LEFKOWITZ,** | **CIVIL ACTION** |
| **Plaintiffs,** | **NO. 14-5216** |
| **v.** | |
| **KORESKO FINANCIAL LP, JOHN J. KORESKO, V., LAWRENCE KORESKO , CIBC WORLD MARKETS CORP., BARRY BOSCOE, PENN MUTUAL LIFE INSURANCE COMPANY, THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, JEFFERSON-PILOT LIFE INSURANCE COMPANY and DOES 1-50,** | |
| **Defendants.** | |

**MEMORANDUM OPINION**

Defendant CIBC World Markets Corporation ("CIBC") moves to dismiss the claims brought against it by Plaintiffs David and Norman Lefkowitz, on the grounds that this Court lacks jurisdiction over CIBC. CIBC also argues that the Lefkowitz's claims are barred by the statute of limitations and that some of the claims must be dismissed for failure to state a claim but because this Court concludes that it lacks jurisdiction over CIBC, it will not address those arguments.

## I. BACKGROUND[1]

CIBC is an investment bank and investment firm organized in Canada and headquartered in Toronto, with its principal place of business in the US in New York, and offices in California. The Lefkowitzes are citizens of California.

[1] The following facts are drawn from Plaintiffs' Amended Complaint and taken as true. *See Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

In 2001, the Lefkowitzes requested that their financial advisor, Mitchell Pindus, a citizen of California, advise them on purchasing life insurance policies. The Lefkowitzes had a longstanding personal and professional relationship with Pindus and had previously established a college savings plan through Pindus. Pindus was a registered representative with CIBC, but the Lefkowitzes do not allege that they were ever clients of CIBC.

In response to the Lefkowitzes inquiries about purchasing life insurance, Pindus recommended the Lefkowitzes meet with Barry Boscoe, a certified financial planner not affiliated with CIBC. In late 2001, Mr. Lefkowitz met with Boscoe at a building called Oppenheimer Tower in Westwood, CA.[2] In addition to Pindus, a group of unnamed persons also affiliated with CIBC (described as "CIBC representatives") also attended the meeting, and it was through this meeting that the Lefkowitzes learned of a multiemployer benefit plan administered by attorney John Koresko ("the Arrangement"). Boscoe and the CIBC representatives encouraged the Lefkowitzes to purchase life insurance policies through the Arrangement at the meeting, and Boscoe had follow-up conversations with Mr. Lefkowitz in which he further touted the Arrangement's alleged benefits. Boscoe and a CIBC representative then assured the Lefkowitzes they would prepare the necessary documentation to join the Arrangement. Boscoe provided the Lefkowitzes an agreement to join the Arrangement, and a CIBC representative provided the Lefkowitzes with literature, insurance applications and investment allocation forms for life insurance policies issued by Penn Mutual Life Insurance Company, a Pennsylvania company and a participant in the Arrangement. Ultimately, the Lefkowitzes' employer's group health and welfare benefits plan (Wiltshire Palisades Law Group Health and Welfare Benefits

[2] The Amended Complaint describes the Oppenheimer Tower as "CIBC's offices." According to Plaintiffs' briefing, CIBC operated through Oppenheimer Private Client Services in 2001 and 2002. However, no mention is made of Oppenheimer in the Amended Complaint.

Plan, or "WP WPB") purchased the policies on behalf of the Lefkowitzes and other employees. Pindus remained involved with the Lefkowitzes subsequent to this purchase, "giving investment advice and establishing the investment allocation plan for investment of the cash assets of the policies" and monitoring those investments.

In 2013, the Lefkowitzes learned that the Arrangement was "bogus" and that Koresko and his associates had been converting trust assets for their personal benefit. The Lefkowitzes initiated this lawsuit in response, suing multiple defendants including Koresko himself, Boscoe, Penn Mutual, and CIBC.[3] As part of the lawsuit, the Lefkowitzes allege that CIBC representatives made misrepresentations about the Arrangement, including misrepresentations about the degree of control participants in the Arrangement maintained over their policies, and that they did not disclose information about Koresko's background, such as his prior criminal record. The Lefkowitzes also maintain that, after the policies were purchased, Pindus and other CIBC representatives working with Boscoe failed to properly monitor their investments. As a result of these acts and omissions, the Lefkowitzes claim they suffered financial harm. Plaintiffs' Amended Complaint alleges a variety of intentional torts, including intentional misrepresentation (Count VI), breach of fiduciary duty (Counts VIII and XII), aiding and abetting a breach of fiduciary duty (Counts IX and XIII), aiding and abetting intentional misrepresentation (X), common law fraud (XI), and professional malpractice (XV), as well as negligent misrepresentation (Count VII).[4]

---

[3] Boscoe and Penn Mutual have since been dismissed from this suit with prejudice. *See* February 25, 2020 Stipulation and Order, ECF 99.

[4] Plaintiffs argue California law applies to their substantive claims, while Defendants argue Pennsylvania law applies. The parties do not seem to disagree, however, that Plaintiffs have alleged intentional torts under either state's laws.

## II. STANDARD OF REVIEW

If a defendant moves to dismiss a case for lack of personal jurisdiction, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

However, "[i]f the [defendant] does submit competent evidence refuting jurisdiction, the [plaintiff] shoulders the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the matter." *Carbonite Filter Corp. v. C. Overaa & Co.*, 353 F. Supp.3d 332, 336 (M.D. Pa. 2018).

## III. DISCUSSION

According to Federal Rule of Civil Procedure 4(e), "a district court may assert personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (internal quotations omitted). Pennsylvania's jurisdictional statute permits the "exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

"Due process requires that [a non-resident] defendant have minimum contacts in the forum state, and that the exercise of jurisdiction comport with traditional notions of fair play and substantial justice." *Remick*, 238 F.3d at 255 (internal quotations omitted). These "minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (internal quotations omitted). In sum, while "physical entrance is not required . . . what is necessary is a deliberate targeting of the forum." *O'Connor v. Sandy*

*Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

Personal jurisdiction may be either general or specific. *See Remick*, 238 F.3d at 255. General jurisdiction is "all-purpose jurisdiction," *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014), which exists over a defendant "even if the cause of action arises from the defendant's non-forum related activities," *Remick*, 238 F.3d at 255. A court may assert general jurisdiction over non-resident corporate defendants "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (internal quotations and alterations omitted); *see also Daimler AG*, 571 U.S. at 138-39 (explaining that "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State" (internal quotations and alterations omitted)). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. . . . With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG*, 571 U.S. at 137 (internal quotations and alterations omitted). However, "[t]he exercise of general jurisdiction is not limited to these forums; in an exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." *BNSF Ry. Co*, 137 S. Ct. at 1558.

In contrast, specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant 'should reasonably anticipate being haled into court' in that forum." *Remick*, 238 F.3d at 255 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). To establish minimum contacts and

determine whether specific jurisdiction exists, courts conduct a three-part inquiry. *O'Connor*, 496 F.3d at 317; *see also Estate of Thompson through Thompson v. Phillips*, 741 F. App'x 94, 98 (3d Cir. 2018) (characterizing the three-part test as an "inquiry" into whether the non-resident defendant satisfies constitutional minimum contacts). "First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotations, citations and alteration omitted).

"Attenuated" contacts are insufficient to satisfy the purposeful direction requirement. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Courts have held that professionals advising clients about matters in foreign jurisdictions are not necessarily subject to personal jurisdiction in those forums as a result of such advice; this is in contrast to courts' approach to professionals conducting business with forum residents or soliciting business within the forum. For example, in *Kellett v. Dolin*, the court rejected plaintiff's argument that New York attorneys and their firm, "by rendering advice to a New York citizen in New York, with the knowledge that he might act on some of that advice in New Hampshire, . . . somehow . . . conducted business in New Hampshire" and purposefully directed their activities at New Hampshire. 1999 WL 814364, at *7 (D.N.H. May 28, 1999).[5] The court dismissed this argument as having "little logical appeal," explaining that "[b]y extension, plaintiffs would seem to suggest that attorneys who advise a United States citizen on a proposed business transaction in the Philippines have 'purposefully availed' themselves of the privilege of conducting business in the Philippines once their client acts on that advice." *Id.* at *6. By contrast, in lawsuit by a Pennsylvania resident

[5] Like Pennsylvania's long-arm statute, New Hampshire's long arm statute provides personal jurisdiction over foreign defendants to the full extent allowed by due process. *See Kellett*, 1999 WL 814364, at *3.

against his financial advisor, a Georgia resident licensed in Pennsylvania, the court in *Rudolph v. Safari Club International* found that defendant had purposefully directed his activities towards Pennsylvania "through his Pennsylvania licensure and by advising . . . a Pennsylvania resident." 2013 WL 3168588, at *5 (W.D. Pa. June 20, 2013). Relatedly, in a lawsuit by a Pennsylvania resident against a Barbadian resort for a spa-related injury, the court in *O'Connor v. Sandy Lane* found that the resort had purposefully directed its activities at Pennsylvania by "mailing seasonal newsletters" to the plaintiffs' Pennsylvania home and "trad[ing] phone calls with them for the purpose of forming an agreement to render . . . services." *O'Connor*, 496 F.3d at 318.

Next, "[w]hether a plaintiff's claims 'arise out of or relate to' the defendant's contacts with the forum state depends, in part, on the type of claim brought." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020). For tort claims, "[t]he defendant must have benefited enough from the forum state's laws to make the burden of facing litigation there proportional to those benefits." *Id.* For intentional torts specifically, "[t]he defendant must have expressly aimed its tortious conduct at the forum to make the forum the focal point of the tortious activity. And the plaintiff must have felt the brunt of the harm in the forum," ("the effects test"). *Id.* (internal citations, quotations and alterations omitted).

**A. General Jurisdiction**

CIBC argues that general jurisdiction does not exist in Pennsylvania because "CIBC has ***no contacts*** with Pennsylvania, much less continuous and systematic contacts" and because "CIBC has no offices in Pennsylvania and does not conduct any business in Pennsylvania." (emphasis in original). Plaintiffs counter that this claim is "fantastical," since CIBC is "an international broker-dealer . . . conducting global operations with worldwide customers"—the implication being that, since CIBC is a global business, it must have some contacts with

Pennsylvania. In support of their position Plaintiffs note that: 1) CIBC is registered with several national regulatory authorities; 2) CIBC is registered with the Pennsylvania Department of Banking and Securities ("DBS"); and 3) CIBC sold Plaintiffs their policies through the Oppenheimer Client Services Division, which currently has offices in Pennsylvania.

CIBC is a Canadian corporation with its principal place of business in the US in New York. *See Daimler AG*, 571 U.S. at 137 (explaining that "the place of incorporation and principal place of business are paradigm bases for general jurisdiction" (internal quotations and alterations omitted)). Plaintiffs have not alleged that CIBC has offices in Pennsylvania or had offices in Pennsylvania in 2001 or 2002,[6] or that CIBC regularly conducts business with citizens of Pennsylvania—much less that CIBC's "operations in [Pennsylvania are] so substantial and of such a nature as to render [it] at home in that State." *BNSF Ry. Co*, 137 S. Ct. at 1558. Neither is the fact that CIBC has a national business, or the fact that it is capable of conducting business in Pennsylvania by virtue of its registration with DBS a substitute for actual continuous and systematic contacts with the state. *See Smith & Loveless, Inc. v. Caicos Corp.*, 2005 WL 1533116, at *4 (D. Kan. June 29, 2005) (rejecting argument that court had jurisdiction over non-resident insurance company by virtue of the fact that the company was registered with the state's insurance department).[7]

Given that Plaintiffs have not demonstrated that CIBC is essentially "at home" in Pennsylvania, this Court cannot exercise general jurisdiction over CIBC.[8]

---

[6] Plaintiffs do allege that the Oppenheimer Client Services Division has an office in Pennsylvania today. However, they concede that Oppenheimer is no longer affiliated with CIBC (CIBC sold Oppenheimer in 2003). Plaintiffs have not demonstrated why the current location of a former CIBC subsidiary should be relevant to the Court's analysis today.

[7] Like Pennsylvania's long-arm statute, Kansas's long arm statute provides personal jurisdiction over foreign defendants to the full extent allowed by due process. *Smith & Loveless, Inc.*, 2005 WL 1533116, at *1.

[8] Plaintiffs requests jurisdictional discovery "[i]f the Court finds that it requires more evidence on personal

### B. Specific Jurisdiction

CIBC argues that neither is it subject to specific jurisdiction in Pennsylvania because Plaintiffs have not demonstrated that it had constitutionally sufficient minimum contacts with Pennsylvania, or that this litigation arises out of any contacts with Pennsylvania. Specifically, CIBC argues that:

> the Amended Complaint is devoid of any allegation or reference to any action in Pennsylvania taken by CIBC specifically. . . . Lefkowitz Plaintiffs allege that CIBC . . . 'introduced Mr. Lefkowitz to the Arrangement' [at CIBC's California Office] and further allege that CIBC [representatives] had follow up discussions at Mr. Lefkowitz's office, also located in California. Thus, the conduct that forms the sole factual bases for the Lefkowitz plaintiffs claim against CIBC occurred exclusively in California between to citizens of California.

Plaintiffs counter that CIBC "purposefully availed itself of the privilege of conducting activities" in Pennsylvania when it "advised and solicited Plaintiffs to purchase two life insurance policies from Penn Mutual Life Insurance Company through the Koresko Arrangement—both based in Pennsylvania;" that CIBC's "placement of the subject Pennsylvania-issued Policies through the Arrangement" connects the claims to Pennsylvania, such that they "arise out of" CIBC's activities in Pennsylvania; and that this Court's exercise of jurisdiction would be reasonable given that all other Koresko-related matters have been before this Court.

---

jurisdiction." District courts "may permit jurisdictional discovery under certain circumstances and at [their] discretion. In general, jurisdictional discovery relates to corporate defendants and arises from an inquiry as to whether they are 'doing business' in the state." *Doe v. Hesketh*, 15 F. Supp.3d 586, 601 (E.D. Pa. 2014).

"Jurisdictional discovery is only appropriate if a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state," *inno360, Inc. v. Zakta, LLC*, 50 F. Supp.3d 587, 596-97 (D. Del. 2014) (internal quotations and alterations omitted) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)), and if a plaintiff's jurisdictional claim is not "clearly frivolous," *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (internal quotations and citations omitted). "[A] mere unsupported allegation that the defendant 'transacts business' in an area is 'clearly frivolous.'" *Id.* (citing *Garshman v. Universal Resources Holding, Inc.*, 641 F. Supp. 1359, 1366 (D.N.J. 1986), *aff'd on other grounds*, 824 F.2d 223 (3d Cir.1987)). Here, Plaintiffs have alleged that CIBC must transact business in Pennsylvania because it is a "global business" capable of transacting business in Pennsylvania; this mere assertion amounts to an unsupported allegation that CIBC "transacts business" in Pennsylvania. Plaintiffs' claims do not justify jurisdictional discovery.

While resolving Plaintiffs' claims against CIBC in this forum may indeed be reasonable from the standpoint of judicial efficiency, this alone does not make such an assertion of jurisdiction constitutional. First, Plaintiffs allege that CIBC purposefully directed its activities when Pindus "advised and solicited Plaintiffs to purchase" the life insurance policies; when CIBC "reviewed the applications and prospectuses" for those policies; when it provided investment advice for the policies; when it received a commission from Plaintiffs' investments; and when it registered with DBS. Of these activities, only the registration with DBS constitutes an activity purposefully directed at Pennsylvania, in that CIBC actively applied for and obtained registration with DBS. Receipt of payment from a forum does not, standing alone, constitute purposeful direction. *Compare United Healthcare Servs., Inc. v. Cephalon, Inc.*, 2018 WL 878766, at *3 (E.D. Pa. Feb. 13, 2018) (finding no support for the proposition that "mere receipt of payments sent from a forum state pursuant to a contract constitutes sufficient minimum contacts with that forum state for purposes of personal jurisdiction") *with Penco Prod., Inc. v. WEC Mfg., LLC*, 974 F. Supp.2d 740, 751 (E.D. Pa. 2013) ("Payment *into* the forum state is one indicator of purposeful availment." (emphasis added)). And, as for the other activities—the soliciting, advising and reviewing—Plaintiffs do not allege that any of these activities occurred in Pennsylvania. *See O'Connor*, 496 F.3d at 317. By Plaintiffs' own telling, CIBC's activities were directed at Californians in California by other Californians representing a Canadian corporation. This is in contrast to the facts underlying the court's asserting of jurisdiction in *O'Connor*, where, though plaintiff's injury occurred in Barbados, the resort solicited the plaintiff's business, recommended services to the plaintiff and finalized his bookings in Pennsylvania through mail and telephone communication. Rather, just as the *Dolin* court explained that an attorney advising a client in New York about a transaction in New Hampshire

was not subject to jurisdiction in New Hampshire by virtue of that advice, CIBC's advising Plaintiffs with respect to a Pennsylvania-based financial product in California does not amount to its purposefully directing its activities at Pennsylvania. *See* 1999 WL 814364, at *7. Indeed, Plaintiffs have cited to no case in which a court has exercised jurisdiction over a financial advisor or a financial services firm on the basis that the advisor or firm recommended or assisted with investment in that forum.

Second, Plaintiffs argue that their claims arise out of and results from the aforementioned activities. Indeed, while Plaintiffs' litigation does arise from CIBC's alleged activities, as explained, none of these activities but CIBC's registration with DBS were directed at Pennsylvania. As for that registration, Plaintiffs litigation does not arise out of or relate to an issue with CIBC's DBS registration. *Cf. Smith & Loveless*, 2005 WL 1533116, at *4. Rather, in their Complaint, Plaintiffs identify the following activities as the basis for their litigation: 1) "soliciting and recommending the Lefkowitz plaintiffs' participation in the Arrangement;" 2) "monitoring the Lefkowitz plaintiffs' investments of the asserts of the insurance policies (but failing to properly monitor them)"; 3) and taking an undisclosed commission for their services. And, with respect to soliciting the Lefkowitzes, the Amended Complaint details the following activities: 1) meeting with Mr. Lefkowitz; 2) selecting the insurance policies; 3) reviewing plan-related literature; 4) recommending participation in the Arrangement; 5) giving investment advice and establishing an investment allocation plan for the policies' assets; and 6) monitoring these investments.[9]

To overcome these deficiencies, Plaintiffs urge the application of the "effects test"

[9] Though Plaintiffs' briefing describes CIBC as "selling" them the Penn Mutual Policies, "selling" is not included among CIBC's activities in the Amended Complaint. In fact, according to the Amended Complaint, WP WBP purchased the policies for Plaintiffs and Penn Mutual sold the policies directly to welfare benefit plans through the arrangement ("Penn Mutual sold at least 42 policies through the Arrangement to at least 21 WBPs. . . .").

applicable to intentional torts, which "may under certain circumstances render the defendant's contacts with the forum—which otherwise would not satisfy the requirements of due process—sufficient." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998). Yet, even applying Plaintiffs' preferred test requires finding that CIBC "expressly aimed its tortious conduct" at Pennsylvania and that Plaintiffs "felt the brunt of the harm in [Pennsylvania]," *Danziger*, 948 F.3d at 130—findings unsupported by Plaintiffs' allegations. Plaintiffs allege that CIBC's meeting, soliciting, recommending, monitoring, reviewing and advising were aimed at Californians in California and they do not allege that they felt the harm anywhere other than in California. Unlike, for example, the situation in *Rudolph*, where a Pennsylvania resident advised by a Georgia resident suffered financial loss while in Pennsylvania, Plaintiffs here have not demonstrated that they suffered the effects of CIBC's alleged behavior in Pennsylvania, much less that CIBC's behavior was aimed at Pennsylvania. 2013 WL 3168588 at *6.

Because the first two prongs of the minimum contacts analysis have not been satisfied, the Court need not consider "whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *O'Connor*, 496 F.3d at 317.

Under these facts, specific jurisdiction does not exist over CIBC in Pennsylvania.[10, 11]

[10] The Third Circuit's decision in *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105 (3d Cir. 2020), is not to the contrary. In *Laurel Gardens*, the court found that Section 1965(b) of the RICO statute governed personal jurisdiction for the non-resident defendants in the RICO conspiracy at issue. *Id.* at 117. The court reasoned that because 1965(b) provides for nationwide service of process, and because "the ends of justice" required all defendants in that case to "be brought before" the same district court, it would not violate due process to assert jurisdiction over Delaware defendants in Pennsylvania. *Id.* at 122 ("In this context, we are not limited to the defendant's contacts with the forum state and instead consider contacts with the nation as a whole."). Here, while Plaintiffs do assert RICO claims against some defendants, they do not assert RICO claims against CIBC.

[11] In the alternative, Plaintiffs argue that the Court has "co-conspirator jurisdiction" over CIBC. Though the Third Circuit "has not adopted this theory of jurisdiction," *Doe*, 15 F. Supp.3d at 595, district courts applying Pennsylvania law have regularly applied this theory, *see, e.g.*, *Aluminum Bahrain B.S.C. v. Alcoa Inc.*, 866 F. Supp.2d 525, 529 (W.D. Pa. 2012) (collecting cases discussing and applying co-conspirator jurisdiction).

## IV. CONCLUSION

Because this Court lacks personal jurisdiction over CIBC, CIBC's Motion to Dismiss will be granted. An appropriate order follows.

**April 13th, 2020**

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

---

**WENDY BEETLESTONE, J.**

---

Under co-conspirator jurisdiction "[t]he court imputes the contacts of the 'resident' co-conspirator over whom it has jurisdiction to the 'foreign' co-conspirator to see if there are sufficient contacts to exercise jurisdiction over the latter." *Doe*, 15 F. Supp.3d at 595. A plaintiff seeking to assert co-conspirator jurisdiction "must plead the defendant's involvement with particularity," and "[c]ourts have recognized co-conspirator jurisdiction where the plaintiff alleges specifically how co-conspirators related to each other in order to make a prima facie showing of personal jurisdiction." *Id.* Here, Plaintiffs assert, as a basis for co-conspirator jurisdiction, that CIBC had a "common policy" with other defendants to provide "false reassurances" about the Arrangement. At most, Plaintiffs allege that CIBC, as well as some other entities, similarly deceived Plaintiffs. This falls short of explaining what the conspiracy consisted of, much less how CIBC "specifically . . . related to" the other defendants. *See id.*